UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**WILLIAM K. LANGFAN REVOCABLE TRUST,**

   Plaintiff,

  v.                                                                      Case No. 22-CV-17

**FOOT LOCKER SPECIALITY, INC.,**

   Defendant/Third-Party Plaintiff,

  v.

**JP-RAP MILWAUKEE, LLC, and
JAMES FARREY,**

   Third-Party Defendants.

---

**DECISION AND ORDER ON PLAINTIFF'S EXPEDITED MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

      This breach of contract dispute arises out of the lease of a property located at 1000-1006 West Mitchell Street in Milwaukee, Wisconsin (the "Property"). The current lessor, the William K. Langfan Revocable Trust (the "Trust"), sues its current lessee, Foot Locker Specialty, Inc., for breach of the lease, amongst other causes of action. Currently before me is the Trust's expedited non-dispositive motion pursuant to Civil L.R. 7(h) for an order granting the Trust immediate access to the Property and requiring Foot Locker to allow the Trust to inspect, market, and lease the Property. (Docket # 12.) Foot Locker opposes the motion. (Docket # 15.) For the reasons explained below, the Trust's motion is denied.

# BACKGROUND

The Trust is the successor in interest to a 99-year lease executed on or about January 30, 1924 for the subject Property located in Milwaukee. (Am. Compl. ¶ 8, Docket # 4.) The lease expires on or about December 31, 2022. (*Id.*) On or about 1938, the lessee at the time demolished the original building located on the subject Property and built the currently existing structure. (*Id.* ¶ 10.) Foot Locker is the successor-in-interest to the original lessee. (*Id.* ¶ 17.)

Under the lease, Foot Locker is responsible for ensuring the Property remains in "good order, condition, and repair" and keeping the Property "in good and proper sanitary condition and in such order and condition as may be required by all ordinances and laws." (*Id.* ¶ 11.) The Trust alleges that Foot Locker has failed to keep the Property in good order and repair, in violation of the lease. (*Id.* ¶ 21.) It alleges the Property currently sits vacant and unoccupied (*id.* ¶ 20) and is unfit for occupancy and will remain unfit unless and until it has undergone substantial repairs (*id.* ¶ 24).

The Trust alleges that on June 25, 2021, it provided Foot Locker with written notice that it was in default of the lease for failing to maintain the Property in accordance with its obligations under the lease and demanded that Foot Locker promptly restore the Property to good order, condition, and repair. (*Id.* ¶ 28.) The Trust alleges that it again provided Foot Locker with written notice of its default on December 13, 2021. (*Id.* ¶ 30.) The Trust further alleges that Foot Locker has denied the Trust access to the Property, despite demand, in violation of Wis. Stat. § 704.05(2) (*id.* ¶ 32) and has refused to restore the Property to good order, condition, and repair (*id.* ¶ 33).

# ANALYSIS

1.  *Preliminary Injunction Standard*

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citations omitted) (emphasis in original). Granting a preliminary injunction involves the "exercise of a very far-reaching power" and is "never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus. Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citations omitted).

To justify a preliminary injunction, the Trust must first make a threshold showing that it has a reasonable likelihood of success on the merits, no adequate remedy at law exists, and it will suffer irreparable harm if a preliminary injunction is denied. *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). If the Trust makes this preliminary showing, I will then consider whether the irreparable harm the Trust will suffer without injunctive relief is greater than the harm the defendant will suffer if the preliminary injunction is granted, and whether a preliminary injunction will harm the public interest. *Starsurgical, Inc. v. Aperta, LLC*, 832 F. Supp. 2d 1000, 1002 (E.D. Wis. 2011). However, if the Trust does not establish a likelihood of success on the merits or that it will suffer irreparable harm if the injunction is not granted, "then the district court's analysis ends and the preliminary injunction should not be issued." *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998) (citation omitted).

The Trust can establish that it is likely to succeed on the merits by showing that its chances of prevailing are better than negligible. *Omega Satellite Prods. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982); *see also Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th

Cir. 1986) (citation omitted) ("Although the plaintiff must demonstrate some probability of success on the merits, 'the threshold is low. It is enough that the plaintiff's chances are better than negligible . . . .'"). A district court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits. *Dexia Credit Local v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010); *see also Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) ("Affidavits are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings.").

    2.    *Application to this Case*

        2.1    Likelihood of Success on the Merits

In Count VI of the Amended Complaint, the Trust alleges that Foot Locker violated Wis. Stat. § 704.05(2) by refusing to allow the Trust access to the Property for inspection, repairs, and marketing, despite reasonable requests for access. (Am. Compl. ¶¶ 60–66.) The Trust argues that it is likely to succeed on the merits of this claim.

Wis. Stat. § 704.05 applies to "any tenancy" and governs the "rights and duties of the landlord and tenant in the absence of any inconsistent provision in writing signed by both the landlord and the tenant." § 704.05(1). Section 704.05(2) provides that: "so long as the tenant is not in default, the tenant has the right to exclusive possession of the premises"; however, the landlord "may upon advance notice and at reasonable times inspect the premises, make repairs and show the premises to prospective tenants or purchasers." The Trust argues that this statute gives it the right to enter the Property to inspect the premises, make repairs, and show the premises to prospective tenants or purchasers.

Foot Locker argues that § 704.05 does not apply because the lease provides specific circumstances in which the landlord can enter the property—(1) if the tenant fails to repair a building on the premises following a fire or other casualty event or (2) upon default (Am. Compl., Ex. A at 5, 8)—and as such, the lease is inconsistent with the statute (Docket # 15 at 3–4). Furthermore, Foot Locker argues that neither circumstance presented in the lease is present in this case to allow the Trust access to the Property.

I find the Trust is likely to succeed on the merits of its claim that Foot Locker is impermissibly denying it access to the Property in violation of the statute. To begin, I disagree that the lease and the statute are inconsistent. Section 704.05(2) provides that the tenant has a right to exclusive possession of the premises, but qualifies the right in certain situations. One such circumstance gives the landlord, upon advance notice and at reasonable times, permission to inspect the premises, make repairs, and show the premises to prospective tenants or purchasers. In other words, a tenant need not be in default for the landlord to invoke its right to enter the premises for any of those stated purposes.

The lease, in contrast, provides for certain circumstances in which the landlord can repossess the Property. In Article VII of the lease, which addresses repair of the premises after damage or destruction from fire or a "casualty event," the tenant is obligated to rebuild or restore the damaged Property and if the tenant fails to do so, the landlord may "at its option," "re-enter and take possession of all said demised premises and property. . . ." (Docket # 4-2 at 5.) In Article XII, which addresses "forfeiture on default, notice," the lease provides that if the tenant fails in "any of the covenants and condition" of the lease, then the landlord, after giving notice of the default, can "re-enter and re-possess" the Property, with the tenant waiving "any demand for possession of the demised premises." (*Id.* at 8.)

These provision do not conflict. The lease provisions Foot Locker cites address not simply situations in which the Trust can enter the Property, but situations in which the Trust can end the lease and take back possession of the Property. Section 704.05(2), in contrast, addresses circumstances in which the landlord can enter the premises even while the tenant has the right to exclusive possession of the premises.

Mark Langfan, trustee of the Trust, avers that the lease is set to terminate on December 31, 2022 and that the Trust wishes to prepare the Property for re-lease when Foot Locker's lease term ends. (Affidavit of Mark Langfan ("Langfan Aff.") ¶ 10, Docket # 14.) The Trust has provided written notice to Foot Locker to inspect the Property; however, Foot Locker has refused to allow a full inspection without conditions. (Affidavit of Adam Bazelon ("Bazelon Aff.") ¶¶ 2, 5–6, Exs. E–G.) The Trust made an additional request to access the Property on April 12, 2022, but failed to receive a response from Foot Locker. (*Id.* ¶ 9.)

Although the parties dispute whether Foot Locker is in default or has otherwise breached the lease, the Trust's right to enter the Property to make repairs, inspect the premises, and show the premises to prospective tenants or buyers does not depend on whether Foot Locker is in default. Thus, I find the Trust has demonstrated that its chances of prevailing on its claim that Foot Locker is impermissibly denying it access to the Property are better than negligible.

### 2.2 No Adequate Remedy at Law and Irreparable Harm

The Trust must also demonstrate, however, that it has no adequate remedy at law and will suffer irreparable harm if immediate access to the Property is not granted. The Trust's lease with Foot Locker ends on December 31, 2022, less than six months from now.

The Trust understandably wishes to prepare the Property to begin showing and marketing it to other tenants. And while Foot Locker contends that the Property is not "on the verge of collapse" and asserts that it has made significant repairs, including bringing the Property into compliance with all Milwaukee codes (Docket # 15 at 1–2), Foot Locker clearly acknowledges that the Property has not been properly maintained. In fact, Foot Locker sued its sublessees, JP-RAP and James Farrey, in Milwaukee County Circuit Court based on the sublessees' alleged failure to maintain the Property in good condition, and obtained a default judgment against them for $529,274.01. (Third-Party Compl. ¶¶ 34–36, Docket # 9.) In other words, it may take six months or more to prepare the Property for a new tenant.

But to establish irreparable harm, the Trust must show that the harm it will sustain cannot be prevented or fully rectified by the final judgment after trial. *See Roland Mach. Co.*, 749 F.2d at 386. Ultimately, if Foot Locker is found to have violated the Trust's statutory right to access the Property for inspection, repairs, and marketing, the harm the Trust will allegedly sustain can be remedied with money damages. The Trust has already calculated damage to the Property amounting to approximately $3 million. (Am. Compl. ¶ 29.) There is no indication that the Trust's losses will be difficult to ascertain or calculate, or that Foot Locker will be unable to satisfy any judgment obtained. *See Praefke Auto Elec. & Battery Co. v. Tecumseh Prod. Co.*, 255 F.3d 460, 463 (7th Cir. 2001) (finding no showing of irreparable harm when losses were purely financial, easily measured, and readily compensated). Furthermore, the Property has been in some state of disrepair since early 2018 (Third-Party Compl. ¶ 17) and the lease term ends on December 31, 2022 (Am. Compl. ¶ 31). Thus, the Trust overstates the urgency of its need to enter the Property. For these reasons, the Trust

7

has failed to show that it will suffer irreparable harm for which there is no adequate remedy at law.

In sum, the Trust has not shown that this case clearly demands the "exercise of [the] very far-reaching power" of a preliminary injunction. *See Roland Mach. Co.*, 749 F.2d at 389. Given its failure to make the required preliminary showing, I need not address the remaining considerations of balance of harms and harm to the public interest. *See Adams*, 135 F.3d at 1154.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Docket # 12) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Reply Brief (Docket # 22) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 12th day of August, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge