UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**WILLIAM K. LANGFAN REVOCABLE TRUST,**

   Plaintiff,

 v.                                          Case No. 22-CV-17

**FOOT LOCKER SPECIALITY, INC.,**

   Defendant/Third-Party Plaintiff,

 v.

**JP-RAP MILWAUKEE, LLC, and
JAMES FARREY,**

   Third-Party Defendants.

---

### DECISION AND ORDER ON THIRD-PARTY DEFENDANTS' MOTION TO DISMISS

---

This breach of contract dispute arises out of the lease of a property located at 1000-1006 West Mitchell Street in Milwaukee, Wisconsin (the "Property"). The current lessor, the William K. Langfan Revocable Trust (the "Trust"), sues its current lessee, Foot Locker Specialty, Inc., for breach of the lease, amongst other causes of action. Foot Locker subleased the Property to JP-RAP Milwaukee, LLC ("JP-RAP"). Foot Locker sues JP-RAP and its sole member and authorized representative, James Farrey, for declaratory judgment, requesting a declaration that to the extent Foot Locker is held liable to the Trust for damages, JP-RAP and Farrey must indemnify it.

JP-RAP and Farrey have moved to dismiss Foot Locker's third-party complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(1). Farrey moves to dismiss pursuant to Rule

12(b)(2) on the grounds that the Court lacks personal jurisdiction over him. (Docket # 18.) Additionally, both JP-RAP and Farrey argue that the third-party complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) as the case or controversy is not yet ripe, depriving the Court of subject matter jurisdiction. (*Id.*)

For the reasons stated below, the third-party defendants' motion to dismiss is granted in part and denied in part. While I find that the Court has personal jurisdiction over Farrey, I agree that the Court lacks subject matter jurisdiction as the claim is unripe. As such, the third-party complaint is dismissed without prejudice.

## BACKGROUND

The Trust is the successor in interest to a 99-year lease executed on or about January 30, 1924 for the subject Property located in Milwaukee. (Am. Compl. ¶ 8, Docket # 4.) The lease expires on or about December 31, 2022. (*Id.*) On or about 1938, the lessee at the time demolished the original building located on the subject Property and built the currently existing structure. (*Id.* ¶ 10.) Foot Locker is the successor-in-interest to the original lessee. (*Id.* ¶ 17.)

Under the lease, Foot Locker is responsible for ensuring that the Property remains in "good order, condition, and repair" and in "good, safe, secure, and sanitary condition." (Third-Party Compl. ¶ 10, Docket # 9.) Upon termination of the lease, Foot Locker must return the Property to the Trust in "good order and condition, ordinary wear, tear, depreciation and use thereof, excepted." (*Id.*)

On November 14, 2007, Foot Locker and JP-RAP executed a sublease agreement conveying a leasehold interest in the Property to JP-RAP. (*Id.* ¶ 11.) The sublease ran through October 31, 2022. (*Id.*) Under the terms of the sublease, JP-RAP agreed to

surrender the Property to Foot Locker in good condition and repair, except for reasonable wear and tear. (*Id.* ¶ 12.) JP-RAP also agreed to indemnify Foot Locker "from and against any loss, cost, damage, expense or liability" resulting from its failure to surrender the Property in accordance with the contract. (*Id.*) The sublease further provided that JP-RAP must repair and maintain the Property at its own cost and expense during the term of the Sublease and that JP-RAP "unconditionally and irrevocably release[d], discharge[d], indemnifie[d] and [held Foot Locker] harmless" from the need to take any corrective actions to maintain the Property in accordance with the contract. (*Id.* ¶ 13.) Finally, the sublease provided that JP-RAP must ensure the Property complies with "all statutes, laws, ordinances, regulations, rules and order of every kind and nature now or hereafter in effect relating to or affecting any part of the [Premises] . . . " and JP-RAP must pay all costs and expenses incidental to the compliance and indemnify Foot Locker from expenses and damages resulting from JP-RAP's failure to comply. (*Id.*)

Foot Locker alleges that at the commencement of the sublease, the Property was in good order, condition, and repair. (*Id.* ¶ 15.) Beginning in 2018, however, Foot Locker alleges that the City of Milwaukee Department of Neighborhood Services ("DNS") inspected the Property on several occasions, revealing numerous code violations. (*Id.* ¶ 16.) In a letter dated April 19, 2018, Foot Locker provided JP-RAP notice of the inspection and the code violations and requested that JP-RAP respond in writing with an estimate of when it would complete the repairs. (*Id.* ¶ 17.) Foot Locker alleges JP-RAP never responded to the notice and never corrected the violations. (*Id.*)

On May 3, 2018, Foot Locker provided JP-RAP with notice that DNS performed an additional inspection revealing further code violations, and informed it of the corrective

actions necessary to bring the Property into compliance. (*Id.* ¶ 18.) Foot Locker again requested JP-RAP provide a written response, and once again JP-RAP failed to respond. (*Id.*)

On September 13, 2018, Foot Locker provided JP-RAP with an additional notice of re-inspection performed by DNS. (*Id.* ¶ 19.) Because the violations remained uncorrected, DNS imposed a re-inspection fee for non-compliance with its prior orders to correct. (*Id.*) Foot Locker requested an immediate response from JP-RAP and proof of compliance. (*Id.*) JP-RAP never responded. (*Id.*) On February 15, 2019, Foot Locker provided JP-RAP with notice of another re-inspection by DNS, and of re-inspection fees imposed by DNS for continued non-compliance. (*Id.* ¶ 20.) Foot Locker again requested an immediate response from JP-RAP and proof of compliance, but again, JP-RAP failed to respond. (*Id.*)

On May 20, 2019, JP-RAP was served with a final notice of default, providing JP-RAP with five days' notice of Foot Locker's intent to enter the Property and make the required repairs. (*Id.* ¶ 21.) Foot Locker inspected the Property on June 13, 2019. (*Id.* ¶ 22.) On August 20, 2019, Foot Locker terminated JP-RAP's right to possess the Property under the sublease. (*Id.* ¶ 24.)

Foot Locker alleges that sometime in 2013, JP-RAP was involuntarily dissolved. (*Id.* ¶ 26.) Farrey was the sole member of JP-RAP. (*Id.* ¶ 26.) Foot Locker alleges that JP-RAP was a sham company formed for the sole purpose of evading Wisconsin creditors. (*Id.* ¶ 27.) Foot Locker alleges that Farrey failed to disclose JP-RAP's dissolution and that Farrey is personally liable for any debts and claims arising against JP-RAP after the effective date of dissolution. (*Id.* ¶ 31.)

On August 27, 2019, Foot Locker sued JP-RAP and Farrey in Milwaukee County Circuit Court, alleging breach of contract and breach of the duty of good faith and fair dealing stemming from their alleged breaches of the sublease. (*Id.* ¶ 35.) JP-RAP and Farrey failed to respond, and Foot Locker was granted a default judgment against JP-RAP and Farrey, jointly and severally, for $529,274.01. (*Id.* ¶ 36.) After default was granted, Farrey appeared and moved to vacate the judgment and dismiss Foot Locker's complaint. (*Id.* ¶ 37.) The court denied the motion, upholding the judgment against JP-RAP and Farrey. (*Id.*)

## LEGAL STANDARDS

In the motion to dismiss, Farrey argue that this Court lacks personal jurisdiction over him due to insufficient contacts with the state of Wisconsin. Additionally, both Farrey and JP-RAP assert dismissal is also appropriate under Rule 12(b)(1) because the Court lacks subject matter jurisdiction as the case or controversy is not yet ripe.

*Rule 12(b)(2)*

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the burden of proof rests on the party asserting jurisdiction to make a *prima facie* showing supporting that assertion. *Hyatt International Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, the court rules on a defendant's motion to dismiss based on the submission of written materials, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* Once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Id.* at 783. In deciding

the dismissal motion, the court must accept as true all well-pleaded facts alleged in the complaint and also resolve in plaintiff's favor all disputes concerning relevant facts presented in the record. *Id.* at 782–83.

In diversity cases, a federal district court has personal jurisdiction over a party if a court of the state in which it sits would have such jurisdiction. *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 279 (7th Cir. 1990). In Wisconsin, this is a two-step inquiry. First, the court must determine whether the defendant falls within the grasp of Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Logan Products, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). The Wisconsin Supreme Court has determined that the long-arm statute "is to be liberally construed in favor of the exercise of jurisdiction." *Federated Rural Electric Insurance Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 391 (7th Cir. 1994) (citing *Schroeder v. Raich*, 89 Wis. 2d 588, 593, 278 N.W.2d 871 (1979)).

Second, if the statutory requirements are satisfied, then the court must consider whether the exercise of jurisdiction over the defendant comports with the due process requirements of the Fourteenth Amendment of the United States Constitution. *Logan Products*, 103 F.3d at 52. There are three essential requirements in this analysis: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); (2) the alleged injury must have arisen from the defendant's forum-related activities, *id.*; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice, *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The crucial inquiry is whether a defendant's contacts with the state are such that it should reasonably anticipate being haled into court.

6

Case 2:22-cv-00017-NJ   Filed 08/12/22   Page 6 of 18   Document 29

*International Medical Group, Inc. v. American Arbitration Association, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002).

*Rule 12(b)(1)*

Rule 12(b)(1) permits a court to dismiss a case for lack of subject matter jurisdiction because, unlike state courts, federal courts are courts of limited subject matter jurisdiction. On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may look beyond the allegations of the complaint and view other submitted evidence. *See Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003). Jurisdiction is the "power to decide" and must be conferred upon a federal court. *See In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). When jurisdictional allegations are questioned, the plaintiff has the burden of proving that the jurisdictional requirements have been met. *See Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.1987).

**ANALYSIS**

Again, Farrey moves to dismiss the third-party complaint against him on the grounds that the Court lacks personal jurisdiction over him. Alternatively, both Farrey and JP-RAP move to dismiss the third-party complaint on the basis of lack of subject matter jurisdiction. I will address each argument in turn.

    1.    *Motion to Dismiss for Lack of Personal Jurisdiction Over Farrey*

Foot Locker's argument for personal jurisdiction over Farrey is two-fold. First, Foot Locker contends that Farrey previously unsuccessfully raised this same issue in state court and is now barred by issue preclusion from raising the claim in this Court. Alternatively, Fook Locker argues that even if Farrey is not barred by issue preclusion, it has stated a *prima facie* case for personal jurisdiction.

1.1 Issue Preclusion

Issue preclusion "is a doctrine designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Burton v. Am. Cyanamid Co.*, No. 07-C-0303, 2022 WL 623895, at *10 (E.D. Wis. Mar. 2, 2022) (quoting *Michelle T. by Sumpter v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993)). Under Wisconsin law, a two-step analysis is used to determine whether issue preclusion applies: first, the court asks whether issue preclusion can, as a matter of law, be applied; if so, the court then asks whether the application of issue preclusion would be fundamentally fair. *In re Estate of Rille ex rel. Rille*, 2007 WI 36, ¶ 36, 300 Wis. 2d 1, 728 N.W.2d 693. In the first step, a court must determine "whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment." *Id.* ¶ 37. In the second step, a court considers five factors, "which are not exclusive or dispositive," in determining whether application of issue preclusion is fundamentally fair. *Id.* ¶ 38.

As to the first step, Foot Locker argues that the Milwaukee County Circuit Court's prior ruling that Farrey was subject to personal jurisdiction in Wisconsin is entitled to preclusive effect. (Docket # 24 at 6.) Farrey counters that issue preclusion cannot be applied in this case because the issues of fact and law are not identical to the prior proceedings in state court. (Docket # 27 at 7.)

As an initial matter, it is clear that both the state court complaint and the third-party complaint arise out of the same basic set of facts. (*Compare* Docket # 25-1 at ¶¶ 9–46 *with* Docket # 9 at ¶¶ 8–38.) It is also clear that Foot Locker invokes the same statutory provisions in both cases as the basis for personal jurisdiction over Farrey—Wis. Stat. §§

801.05(1)(d), (3), 5(a), and (6)(a). (*See* Compl. ¶ 7, Docket # 25-1 at 5, Third-Party Compl. ¶ 6, Docket # 9 at 17.) Furthermore, the parties raise the same legal arguments before both courts. Farrey argued to the state court, as he argues here, that Farrey himself did not engage in any activities within Wisconsin and that personal jurisdiction over JP-RAP cannot be imputed to Farrey. (Docket # 18 at 3–7, Docket # 25-4 at 3–10.) Whereas Foot Locker similarly argued in both actions that Farrey engaged in "substantial and not isolated activities within the state" under Wis. Stat. § 801.05(1)(d), including collecting rents and acting as a landlord. (Bosack Decl. ¶ 8, Ex. G, Docket # 25-7 at 37.)

Farrey contends, however, that one significant fact has changed since the state court rendered its judgment that disposes of this issue. Specifically, on the date the state court issued its decision, February 7, 2022, JP-RAP was administratively dissolved under Illinois law. On February 17, 2022, Farrey submitted an application and the applicable reports and fees to return JP-RAP to "active" status. (Docket # 27 at 5.) JP-RAP's status was changed to "active" on March 9, 2022. (*Id.*) Under Illinois law, after a limited liability company is restored to active status after an administrative dissolution:

> [T]he limited liability company existence shall be deemed to have continued without interruption from the date of the issuance of the notice of dissolution, and the limited liability company shall stand revived with the powers, duties, and obligations as if it had not been dissolved; and all acts and proceedings of its members, managers, officers, employees, and agents, acting or purporting to act in that capacity, and which would have been legal and valid but for the dissolution, shall stand ratified and confirmed.

805 Ill. Comp. Stat. Ann. 180/35-40(d). The parties' arguments before the state court regarding personal jurisdiction over Farrey focused on whether JP-RAP was dissolved. Specifically, Foot Locker pointed to § 180/35-40(e), which provides that "upon the filing of the application for reinstatement, no member, manager, or officer shall be personally liable

9
Case 2:22-cv-00017-NJ    Filed 08/12/22    Page 9 of 18    Document 29

for the debts and liabilities of the limited liability company incurred during the period of administrative dissolution by reason of the fact that the limited liability company was administratively dissolved at the time the debts or liabilities were incurred." (Docket # 25-7 at 21.) Foot Locker argued that because § 180/35-40(e) provides that members are not liable for debts incurred during administrative dissolution *upon the filing of the application for reinstatement*, it follows that because JP-RAP was never reinstated, Farrey remains liable for JP-RAP's liabilities. (*Id.* at 20–21.)

The state court agreed. In finding the court could extend personal jurisdiction over Farrey, it noted that it was undisputed that JP-RAP was involuntarily dissolved in January 2013 and thus Farrey was arguably not acting on behalf of JP-RAP, but in an individual capacity, after that date. (*Id.* at 39.) The court found that Farrey continued to operate as a tenant and landlord of the premises for approximately six years after January 2013. (*Id.*) The court concluded that "[i]t is unreasonable for Farrey to argue that acting as a tenant and a landlord of Wisconsin property and carrying out those duties therein for approximately six years are not substantial and isolated activities in the state." (*Id.*) The court further found that to the extent Farrey profited from collecting rents on the premises after dissolution of JP-RAP, "this constitutes contacts in Wisconsin that were in anticipation of direct or indirect financial benefit to Farrey individually. Thus would satisfy Wisconsin's long-arm statute." (*Id.* at 40.)

Given the state court's decision turned on a fact that has now changed, I cannot say that the issue or fact currently before me was actually litigated and determined in the state court proceeding. Indeed, on April 12, 2022, Farrey filed an additional motion in the state court proceedings again asking the court to find it lacks personal jurisdiction over him,

presumably due to the changed circumstance of the limited liability company's reinstatement. (Bosack Decl. ¶ 9.) The state court has yet to rule on this motion. (*Id.*) Because I find issue preclusion cannot be applied as a matter of law, I need not address the second step of the analysis.

### 1.2 Application of Wisconsin's Long-Arm Statute

Foot Locker argues that even if issue preclusion does not apply, it has made a *prima facie* showing for personal jurisdiction over Farrey. (Docket # 24 at 7.) Again, to make a *prima facie* showing of jurisdiction, Foot Locker must show that Farrey falls within the grasp of Wisconsin's long-arm statute, Wis. Stat. § 801.05, and if so, then I must determine whether the exercise of jurisdiction over the defendant comports with the due process requirements of the Fourteenth Amendment of the United States Constitution.

Wisconsin's long-arm statute enumerates several different grounds for personal jurisdiction. Foot Locker contends that this Court has personal jurisdiction over Farrey under Wis. Stat. §§ 801.05(1)(d), (3), 5(a), and 6(a). (Third-Party Compl. ¶ 6.) Wisconsin's long-arm statute clearly contemplates the exercise of personal jurisdiction over parties who lease property in Wisconsin. *See* Wis. Stat. § 801.05(6)(a). This is likely why the parties do not contest the Court's exercise of personal jurisdiction over JP-RAP. *See, e.g.*, *Dissolved Air Floatation Corp. v. Kothari*, No. 14-C-1223, 2016 WL 5376192, at *4 (E.D. Wis. Sept. 26, 2016) ("Having agreed to lease property in Wisconsin, the LLC itself deliberately created a relationship not only with the sellers, but with the forum state itself. It would therefore not be unreasonable for a complaint alleging breach of that lease to be brought in a Wisconsin court."). But Foot Locker did not enter into the sublease with Farrey individually; it signed the agreement with JP-RAP, the limited liability company of which Farrey is the sole

member. (Third-Party Compl., Ex. A, Docket # 9-1.) While Foot Locker contends that jurisdiction is proper over Farrey because he negotiated and executed the sublease with Foot Locker, sublet the property to another tenant, paid rent to Foot Locker, and collected rent from the sublessee, (Docket # 24 at 9), Farrey performed these actions on behalf of the LLC.

Under Wisconsin law, a court cannot exercise personal jurisdiction over an officer based solely on its jurisdiction over the corporation. *Pavlic v. Woodrum*, 169 Wis. 2d 585, 590, 486 N.W.2d 533, 533 (Ct. App. 1992) ("[P]ersonal jurisdiction over the corporation cannot be the sole basis for personal jurisdiction over an officer."); *Oxmans' Erwin Meat Co. v. Blacketer*, 86 Wis. 2d 683, 691, 273 N.W.2d 285, 288 (1979). However, a corporate agent is still liable for his own bad acts and cannot "shield himself from personal liability for a tort he personally commits or participates in by hiding behind the corporate entity; if he is shown to have been acting for the corporation, the corporation also may be liable, but the individual is not thereby relieved of his own responsibility." *Oxmans' Erwin Meat Co.*, 86 Wis. 2d at 692. *See also See Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 998 (E.D. Wis. 2003) ("[T]he fact that Gubb's contacts with Wisconsin occurred while he was acting on behalf of Sterling is not a bar to the exercise of jurisdiction over him as an individual by this court.").

Farrey presents a trickier situation because he is the sole member of the LLC. Obviously, an entity must act through its members, and Farrey is the only one who exists to act on its behalf. This does not automatically mean, however, that the corporate form should be quickly disregarded simply because the LLC consists of only one member.

Thus, if personal jurisdiction over Farrey can only be based upon his role as a member of JP-RAP, then the Court would not have jurisdiction over Farrey under *Pavlic*. In contrast, if Foot Locker's allegations seek to hold Farrey liable not merely because he is a member of JP-RAP, but because of his own actions, even while acting on behalf of JP-RAP, then he cannot hide behind the corporate form to evade personal liability. *See Oxmans' Erwin Meat Co.*, 86 Wis. 2d at 692. "The law limits the contractual liability of those who act through corporations or LLCs, not liability incurred by their own tortious conduct." *Webber v. Armslist LLC*, No. 20-C-1526, 2021 WL 5206580, at *4 (E.D. Wis. Nov. 9, 2021).

I find that Foot Locker has made a *prima facie* showing that Farrey falls within the grasp of Wisconsin's long-arm statute. Foot Locker does not merely allege that Farrey was acting as an officer of JP-RAP when he performed his alleged actions; it alleges that Farrey was using the limited liability company to perpetrate a fraud and breach of contract against Foot Locker. (Third-Party Compl. ¶¶ 27, 30.) Foot Locker alleges that Farrey failed to disclose the LLC's dissolution to Foot Locker (*id.* at 30) and refused to repair the Property in violation of the sublease, allowing the Property to deteriorate (*id.* at 34). Foot Locker further alleges that during the time of dissolution, Farrey continued to pay rent to Foot Locker and assumed JP-RAP's contractual duties under the sublease. (*Id.* ¶ 31.)

Farrey, however, argues that because under Illinois law involuntary dissolution is reversible upon payment of all fees and penalties and the filing of past-due reports and because JP-RAP was returned to active status before the third-party complaint was filed, the dissolution has absolutely no bearing on personal jurisdiction over Farrey. (Docket # 18 at 6–7.) I disagree. Again, Foot Locker does not merely allege that Farrey acted on behalf of JP-RAP, it alleges that Farrey was using JP-RAP to perpetuate a fraud. Foot Locker alleges

that it signed the sublease with JP-RAP; however, when JP-RAP was involuntarily dissolved in 2013, Farrey, as JP-RAP's sole member, declined to inform Foot Locker that the LLC was no more. (Third-Party Compl. ¶¶ 26, 30.) Despite the dissolution, Foot Locker alleges that Farrey continued paying rent under the sublease. (*Id.* ¶ 31.) During the intervening time period, Foot Locker sent multiple correspondences to JP-RAP regarding notices from the Milwaukee DNS regarding code violations. (Third-Party Compl. ¶¶ 17–21, Exs. B, C, D, E, F.) Farrey, however, did not inform Foot Locker during time that the LLC was dissolved. Furthermore, during the Milwaukee County proceedings, Farrey's counsel stated that JP-RAP was "not operating anymore," so that there was "no business reasons to bring it back current, so [Farrey] just hasn't bothered over the past few years." (Docket # 25-7 at 27.) Farrey *did* subsequently bring JP-RAP back current approximately ten days after the state court hearing, now arguing that Farrey is again protected by the corporate form because Illinois law erases the dissolution.

I need not, at this stage, determine whether Farrey will ultimately be held liable. It is sufficient, for purposes of establishing a *prima facie* showing of personal jurisdiction, that Foot Locker has alleged that Farrey himself committed actions that damaged the Property at issue such that Farrey could individually be held liable for his own tortious conduct.

Finding Farrey falls within the grasp of the long-arm statute, I now turn to whether the exercise of jurisdiction over him comports with the requirements of due process. Again, the crucial inquiry is whether a defendant's contacts with the state are such that it should reasonably anticipate being haled into court. *International Medical Group, Inc.*, 312 F.3d at 846. Notwithstanding the Illinois statute retroactively erasing the administrative dissolution, for a significant number of years, Farrey operated as landlord and tenant of a property in the

State of Wisconsin as if JP-RAP still existed. Farrey failed to inform Foot Locker that the party it contracted with was now defunct, and did not correct Foot Locker's belief to the contrary when it sent JP-RAP multiple letters. Rather, Farrey continued to operate the rental property. Again, Farrey acknowledged to the state court that by early 2022, JP-RAP had not operated in years. Despite this fact, Farrey allegedly continued to pay rent to Foot Locker and failed to keep the Property in good repair in violation of the sublease. Given Farrey's significant actions involving leased property within the State of Wisconsin, it does not offend due process for Farrey to expect to answer to allegations of harm to the Property in the state in which the property sits. For these reasons, Farrey's motion to dismiss for lack of personal jurisdiction is denied.

  2. *Motion to Dismiss for Lack of Subject Matter Jurisdiction Over Farrey and JP-RAP*

Farrey and JP-RAP alternatively argue that the court lacks subject matter jurisdiction because the case or controversy is not yet ripe. (Docket # 18 at 9.) Specifically, in the third-party complaint, Foot Locker seeks a declaratory judgment that to the extent the Court determines that Foot Locker breached its lease with the Trust, neglected the Property, or committed waste, that those breaches are attributable to JP-RAP and/or Farrey's breaches of the sublease, for which it must indemnify Foot Locker. (Third-Party Compl. ¶ 42.) Farrey and JP-RAP argue that because there has been no finding of liability against Foot Locker at this time, its declaratory judgment claim is speculative and not yet ripe. (Docket # 18 at 9–10.)

The Federal Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking

such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The goal of the Declaratory Judgment Act is to allow for the efficient resolution of disputes by an early adjudication of the rights of the parties. *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010). By its terms, the Act gives the district court "discretion" to declare the rights of the litigants. *Id.* at 377–78.

Foot Locker argues that its third-party complaint is brought pursuant to Fed. R. Civ. P. 14(a)(1), which provides that a defendant may bring a third-party complaint against a nonparty "who is or *may be liable to it* for all or part of the claim against it." (Docket # 24 at 11 (emphasis in original).) Foot Locker argues that the sublease calls for JP-RAP to indemnify Foot Locker for claims related to the Property that arise during the term of the sublease. (*Id.* at 12.) It argues that Rule 14 "clearly contemplates that an action against a third-party defendant is permitted where the third-party defendant's liability is dependent upon the main action." (*Id.*)

In *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580 (7th Cir. 2003), the court, in addressing a declaratory judgment action, stated that we "regularly say that decisions about indemnity should be postponed until the underlying liability has been established." *Id.* at 583 (citing *Nationwide Insurance Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."); *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) ("[T]he duty to indemnify is unripe until the insured has been held liable."); *Travelers Insurance Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992) ("[T]he determination of whether [defendant] has a duty to indemnify is not ripe until the underlying litigation is terminated."). Foot Locker contends that these cited cases are distinguishable "because each

involved a declaratory action premised upon unresolved liability in a *separate state-court action*." (Docket # 24 at 12 (emphasis in original).) It further argues that because those cases did not involve Rule 14, they are inapplicable to this action. (*Id.*)

I disagree. Neither the Declaratory Judgment Act nor Rule 14 dispenses with the Article III case or controversy requirement. *See Zavalis*, 52 F.3d at 692 (the Declaratory Judgment Act); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978) (Rule 14). And the Seventh Circuit's finding that indemnification is unripe until liability is determined does not turn on the underlying liability being determined by a separate court. *See Med. Assur. Co. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010). Rather, the court reasons that: "A declaration that A must indemnify B if X comes to pass has an advisory quality; and if the decision would not strictly be an advisory opinion (anathema under Article III) it could be a mistake, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant." *Lear Corp.*, 353 F.3d at 583. For these reasons, I find that Foot Locker's declaratory judgment action is unripe and must be dismissed for lack of subject matter jurisdiction. Foot Locker's third-party complaint is dismissed without prejudice.

## CONCLUSION

Foot Locker sues JP-RAP and Farrey requesting a declaration that the third-party defendants must indemnify Foot Locker if the Court determines that Foot Locker is liable to the Trust for damages. JP-RAP and Farrey move to dismiss the third-party complaint on the grounds that the Court lacks personal jurisdiction over Farrey pursuant to Rule 12(b)(2) and lacks subject matter jurisdiction over both Farrey and JP-RAP pursuant to Rule 12(b)(1). While I find the Court does have personal jurisdiction over Farrey, the third-party complaint must nonetheless be dismissed as unripe.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the third-party defendants' motion to dismiss (Docket # 18) is **GRANTED IN PART AND DENIED IN PART**. The motion to dismiss for lack of personal jurisdiction is denied; however, the motion to dismiss for lack of subject matter jurisdiction is granted. The third-party complaint is dismissed without prejudice as unripe.

Dated at Milwaukee, Wisconsin this 12th day of August, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge